**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

**TRACIE P.,**

                          **Plaintiff,**

           v.                                                     3:19-CV-837
                                                                             (FJS)

**COMMISSIONER OF SOCIAL SECURITY,**

                          **Defendant.**

---

**APPEARANCES**                                                        **OF COUNSEL**

**LAW OFFICES OF**                              **JUSTIN M. GOLDSTEIN, ESQ.**
**KENNETH HILLER, PLLC**                **KENNETH R. HILLER, ESQ.**
6000 North Bailey Avenue – Suite 1A
Amherst, New York 14226
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**    **KEVIN M. PARRINGTON, ESQ.**
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    Plaintiff Tracie P. brought this action pursuant to the Social Security Act, 42. U.S.C. § 405(g) (the "Act"), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner"), denying her application for benefits. *See generally* Dkt. Nos. 1, 12. Pending before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. *See* Dkt. Nos. 12, 18.

## II. PROCEDURAL HISTORY AND BACKGROUND

Plaintiff applied for benefits on February 14, 2016, alleging disability as of January 27, 2015. *See* Dkt. No. 8, Administrative Record ("AR"), Ex. 1D, at 165.[1]  Plaintiff filed a timely request for a hearing on August 31, 2016. *See id.,* Ex. 3B, at 108-110.  A video hearing was held on June 20, 2018, before Administrative Law Judge Kenneth Theurer (the "ALJ"). *See id.* at 47-67.  Matthew Nutting – a non-attorney representative – represented Plaintiff at the hearing. *See id.* at 49.  A vocational expert, Mr. David Festa, testified. *See id.*

On August 2, 2018, the ALJ issued a written decision in which he made the following findings "[a]fter careful consideration of the entire record …"

1) Plaintiff "meets the insured status requirements of the Social Security Act through September 30, 2019."

2) Plaintiff "has not engaged in substantial gainful activity since January 27, 2015, the alleged onset date."

3) Plaintiff "has the following severe impairments: migraines, fibromyalgia, mixed connective tissue disorder, carpal tunnel, degenerative disc disease of the cervical spine, anxiety, depression, and obesity."

4) Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."

5) Plaintiff "has the following residual functional capacity: she can occasionally lift and carry 10 pounds; sit for approximately six hours; stand or walk for approximately two hours in an eight-hour day with normal breaks; occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; she would need to be permitted to alternate from a seated to a standing position (or vice versa) two times each hour for no more than five minutes while remaining on-task; she should not perform … frequent fine manipulation such as repetitive hand-finger actions, fingering, or feeling with either hand, but retains the ability to grasp, hold, turn, raise,

---

[1] All references to page numbers in the Administrative Record are to the Bates Stamp numbers in the bottom right corner of those pages.  All references to page numbers in other documents in the record are to the page numbers that the Court's ECF system generates, which appear in the top right corner of those pages.

and lower objects with either hand; that she can tolerate no more than moderate levels of noise as defined in Appendix D of the Selected Characteristics of Occupations, 1993 Edition; she should avoid work outdoors in bright sunshine and work with bright or flickering lights, such as would be experienced in welding or cutting metals; and her work is limited to simple, routine, and repetitive tasks in a work environment involving only simple, work-related decisions with few, if any, workplace changes."

6) Plaintiff "is unable to perform any past relevant work."

7) Plaintiff "was born on January 11, 1971 and was 44 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. [Plaintiff] subsequently changed age category to a younger individual age 45-49."

8) Plaintiff "has at least a high school education and is able to communicate in English."

9) "Transferability of job skills is not material to the determination of disability, because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled,' whether or not [Plaintiff] has transferable job skills."

10) "Considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform."

11) Plaintiff "has not been under a disability, as defined in the Social Security Act, from January 27, 2015, through the date of this decision."

*See* AR at 12-27 (citations omitted).

The ALJ's decision became the Commissioner's final decision on May 14, 2019, when the Appeals Council of the Social Security Administration denied Plaintiff's request for review. *See id.* at 1-4. Plaintiff then commenced this action on July 12, 2019, filing a supporting brief on January 31, 2020. *See* Dkt. Nos. 1, 12. The Commissioner filed a response brief on April 29, 2020. *See* Dkt. No. 18.

In support of her motion, Plaintiff first argues that the ALJ failed to evaluate evidence supporting the Listing 14.06 requirements. *See generally* Dkt. No. 12 at 11-14. She also contends that the ALJ's residual functional capacity ("RFC") and consistency findings were

- 3 -

unsupported by substantial evidence and that the ALJ did not apply the appropriate legal standards. *See generally id.* at 14-25.

### III. DISCUSSION

**A. Standard of review**

Absent legal error, a court will uphold the Commissioner's final determination if there is substantial evidence to support it. *See* 42 U.S.C. § 405(g). The Supreme Court has defined substantial evidence to mean "'more than a mere scintilla'" of evidence and "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). Accordingly, a reviewing court "'may not substitute [its] own judgment for that of the [Commissioner], even if [it] might justifiably have reached a different result upon a de novo review." *Cohen v. Comm'r of Soc. Sec.*, 643 F. App'x 51, 52 (2d Cir. 2016) (Summary Order) (quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984)). In other words, "[t]he substantial evidence standard means once an ALJ finds facts, [a reviewing court may] reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (quotation and other citation omitted).

To be eligible for benefits, a claimant must show that she suffers from a disability within the meaning of the Act. The Act defines "disability" as an inability "to engage in any substantial gainful activity [("SGA")] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To determine if a claimant has sustained a disability within the meaning of the Act, the ALJ follows a five-step process:

1) The ALJ first determines whether the claimant is engaged in SGA.  *See* C.F.R. §§ 416.920(b), 416.972. If so, the claimant is not disabled.  *See* 20 C.F.R. § 416.920(b).

2) If the claimant is not engaged in SGA, the ALJ determines if the claimant has a severe impairment or combination of impairments.  *See* 20 C.F.R. § 416.920(c).  If not, the claimant is not disabled.  *See id.*

3) If the claimant has a severe impairment, the ALJ determines if the impairment meets or equals an impairment found in the appendix to the regulations (the "Listings").  If so, the claimant is disabled.  *See* 20 C.F.R. § 416.920(d).

4) If the impairment does not meet the requirements of the Listings, the ALJ determines if the claimant can do her past relevant work.  *See* 20 C.F.R. § 416.920(e), (f).  If so, the claimant is not disabled.  *See* 20 C.F.R. § 416.920(f).

5) If the claimant cannot perform her past relevant work, the ALJ determines if she can perform other work, in light of her RFC, age, education, and experience.  *See* 20 C.F.R. § 416.920(f), (g).  If so, then she is not disabled. *See* 20 C.F.R. § 416.920(g).  A claimant is only entitled to receive benefits if she cannot perform any alternative gainful activity. *See id.*

For this test, the burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step if the analysis proceeds that far.  *See Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998) (citation omitted).

**B. Evidence supporting Listing 14.06**

Plaintiff first argues that, despite finding that she had severe mixed connective tissue disorder ("MCTD") at Step 2, the ALJ failed to discuss evidence at Step 3, which would have shown that the Listing 14.06A requirements were met.  *See* Dkt. No. 12 at 11.  To meet the requirements for Listing 14.06A, a claimant must have an undifferentiated or mixed connective tissue disease, as described in the Listings, with the following:

   A. Involvement of two or more organs/body systems, with:

   1. One of the organs/body systems involved to at least a moderate level of severity; and

>    2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).

20 C.F.R. § 404, Subpt. P, App. 1, Listing 14.06A.

Plaintiff asserts that the elements of Listing 14.06A are met because she had been diagnosed with MCTD since at least a year prior to April 29, 2014, her laboratory findings support an autoimmune disorder, there is evidence of eight separate organs/body systems involved to at least a moderate level of severity, and there are least two constitutional symptoms or signs because Plaintiff suffers from severe fatigue and malaise. [2]  *See* Dkt. No. 12 at 12-13.

"Courts have required an ALJ to provide an explanation as to why the claimant failed to meet or equal the Listings, '[w]here the claimant's symptoms as described by the medical evidence appear to match those described in the Listings.'"  *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 273 (N.D.N.Y. Apr. 30, 2009) (quoting *Kuleszo v. Barnhart*, 232 F. Supp. 2d 44, 52 (W.D.N.Y. 2002)).  "However, if an ALJ's decision lacks an express rationale for finding that a claimant does not meet a Listing, a Court may still uphold the ALJ's determination if it is supported by substantial evidence." *Id.* (citing *Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982)).

In Step 3, the ALJ found that, although Plaintiff suffered from several "severe" conditions—including MCTD—within the meaning of the Regulations, her conditions "did not meet or medically equal the severity of any impairment set forth in sections 1.02, 1.04, 11.14, 12.04, 12.06, or 14.06 of the Listings…"  *See* AR at 13.  The ALJ did not undertake a thorough analysis of Plaintiff's symptoms in Step 3 to determine whether they satisfied each of the

---

[2] For purposes of the Act, "[s]evere fatigue means a frequent sense of exhaustion that results in significantly reduced physical activity or mental function."  20 C.F.R. § 404, Subpt. P, App. 1, Listing 14.00(C)(2).  "Malaise means frequent feelings of illness, bodily discomfort, or lack of well-being that result in significantly reduced physical activity or mental function."  *Id.*

elements of Listing 14.06. *See generally id.* However, as the *Rockwood* court explained, the Court can uphold the ALJ's finding as long as it is supported by substantial evidence in the record.

In their briefs, the parties specifically focus on whether the ALJ analyzed Plaintiff's severe fatigue and malaise, which allegedly make up her two constitutional symptoms or signs to support a finding of "disabled" under Listing 14.06. *See* Dkt. No. 12 at 13; Dkt. No. 18 at 13. Severe fatigue and malaise are symptoms that the ALJ must evaluate using the "two-step process," just as he would for any other symptoms. *See* 20 C.F.R. § 404, Subpt. P, App. 1, Listing 14.00(H). "The regulations provide a two-step process for evaluating a claimant's assertions of pain and other limitations. At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(b)). "If the claimant does suffer from such an impairment, at the second step, the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." *Id.* (quoting [20 C.F.R. § 404.1529(a)]). "The ALJ must consider '[s]tatements [the claimant] or others make about [her] impairment(s), [her] restrictions, [her] daily activities, [her] efforts to work, or any other relevant statements [she] make[s] to medical sources during the course of examination or treatment, or to [the agency] during interviews, on applications, in letters, and in testimony in [its] administrative proceedings.'" *Id.* (quoting 20 C.F.R. § 404.1512(b)(3)); (citing 20 C.F.R. § 404.1529(a); S.S.R. 96-7p).

The ALJ went through this analysis in Step 4 of his decision. *See* AR at 16. Specifically, he noted that Plaintiff complained about chronic pain and fatigue as symptoms of her MCTD

and other diagnoses, and she indicated that her pain and fatigue negatively affected her activities of daily living. *See id.* at 22. In applying this two-step process, the ALJ first found that Plaintiff suffered from MCTD, among other conditions, and that it could reasonably be expected to cause her alleged symptoms. *See id.* After careful consideration, however, the ALJ found that Plaintiff's statements concerning the "intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" *See id.* Notably, the ALJ found that Plaintiff's physical exams "by her neurology, rheumatology, and orthopedic providers have not produced very significant findings[.]" *See id.* (citing Exs. 4F, 5F, 6F, 19F, 22F, 27F). Furthermore, the ALJ concluded that none of Plaintiff's "mental status exams performed by her primary care providers since the alleged disability onset date have produced any positive findings[.]" *See id.* at 21 (citing Exs. 3F, 21F). Finally, upon the ALJ's review of the medical records, he found that Plaintiff only occasionally complained to her providers of fatigue or malaise. *See generally id.* at 21-22 (citing, *e.g.*, 6F, 19F, 25F, 27F).

Accordingly, for all of the above-stated reasons, the Court holds that the ALJ's finding that Plaintiff did not meet the 14.06 Listing requirements is supported by substantial evidence in the record; and, the Court further finds that the ALJ's rationale was explained elsewhere in his decision.

## C. The ALJ's RFC finding

Plaintiff argues that the ALJ failed to explain or identify evidence to support the abilities and limitations he incorporated into her RFC finding. *See* Dkt. No. 12 at 15. Plaintiff notes that, "[a]lthough thorough and lengthy, the ALJ's summation of the evidence and weighing of the medical opinions is inadequate to explain the very specific findings within the RFC finding,

- 8 -

and the ALJ's mischaracterization of the evidence negatively impacted both the RFC and consistency findings." *See id.* The Commissioner, in response, indicates that Plaintiff's argument "has things backward: the ALJ is not required to prove what Plaintiff can do; rather, Plaintiff is required to prove what she cannot do." *See* Dkt. No. 18 at 15. The Court addresses the ALJ's findings regarding Plaintiff's physical and mental RFCs in turn.

### 1. *Physical RFC finding*

In coming to Plaintiff's physical RFC finding, the ALJ indicated that he afforded great weight to consultative internal medicine examiner Dr. Gilbert Jenouri, M.D., great weight to State Agency medical consultant Dr. Colleen Ryan, M.D., and less weight to the medical source statement filled out by Plaintiff's primary care physician, Dr. Anna Marie Ward, M.D. *See* AR at 22-23. Plaintiff first argues that the ALJ erred because he did not follow the "treating physician rule." *See* Dkt. No. 12 at 16.

The treating physician rule "mandates that the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (citing 20 C.F.R. § 416.927(d)(2)). However, treating physicians are "'not afforded controlling weight where … the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . .'" *Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) (summary order) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam)). An ALJ may also properly afford less than controlling weight to a treating physician's medical source statement where the "medical source statement conflict[s] with his

own treatment notes[.]" *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (summary order).[3]

Here, the ALJ found support for Dr. Ward's opinion in her medical source statement to the extent that she determined that Plaintiff could stand/walk for about four hours in an eight-hour workday, sit for a total of six hours in an eight-hour workday, occasionally lift and carry 10 pounds, and never climb ladders. *See* AR at 23 (citing Ex. 24F). The ALJ declined to adopt Dr. Ward's further determinations that Plaintiff could sit for 20 minutes at one time, stand for 15 minutes at one time, needed a job that permitted shifting positions at will from sitting, standing, or walking, sometimes needed to take unscheduled breaks on a frequent basis, needed to elevate her legs to heart level for 75 percent of an eight-hour workday, could never look down, could rarely twist, stoop, or crouch, and could occasionally use her hands to grasp, turn, and twist objects. *See id.* (citing Ex. 24F). The ALJ explained that he afforded these opinions in Dr. Ward's medical source statement less than controlling weight because "Dr. Ward expressly made it clear that this portion of her opinion was based solely on [Plaintiff]'s subjective report of her own functional limitations, rather than on any clinical or objective findings." *See id.*

---

[3] Additionally, "[a]n ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to that opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (citing 20 C.F.R. § 404.1527(d)(2)). These factors include the following: "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion." *Id.* (citation omitted). The Second Circuit has held, however, that ALJs are not required to evaluate each of these factors. *See Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order) (citing *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004) (per curiam) (affirming ALJ's opinion which did not "expressly acknowledge the treating physician rule," but where "the substance of the treating physician rule was not traversed.")).

(citing Ex. 24F). The ALJ further found that portion of Dr. Ward's assessment to be contrary to Drs. Jenouri's and Ryan's medical opinions. *See id.*

In addition, the ALJ remarked that the latter findings were inconsistent with Dr. Ward's treatment notes. *See id.* For example, the ALJ noted that, although Dr. Ward opined in the medical source statement that Plaintiff needed to elevate her legs to heart level for 75% of the day, there is not a single mention of this requirement in Dr. Ward's treating records, nor did she assess Plaintiff as having—or find any indication of—lower leg edema that would require her legs to be elevated. *See id.* (citing Ex. 25F). For all of these reasons, the Court finds that the ALJ did not err in affording "less weight" to Dr. Ward's medical source statement.

Plaintiff additionally contends that, regardless of the weights the ALJ afforded them, Drs. Jenouri's and Ryan's opinions "are inadequate to support the specific findings within the RFC determination." *See* Dkt. No. 12 at 17. "'A very specific RFC assessment – such as the specific amount of time a claimant can spend on certain activities – must be based on evidence in the record, not on "the ALJ's own surmise."'" *Cheek v. Comm'r of Soc. Sec.*, No. 1:18-CV-01455 EAW, 2020 U.S. Dist. LEXIS 74544, *13 (W.D.N.Y. Apr. 28, 2020) (quoting *Heckman v. Comm'r*, No. 18-CV-6032, 2019 U.S. Dist. LEXIS 58447, *8 (W.D.N.Y. Apr. 4, 2019) (quoting *Cosnyka v. Colvin*, 576 F. App'x 43, 46 (2d Cir. 2014) [(summary order)])).

In this case, the ALJ certainly did not leave Plaintiff's RFC assessment to his "own surmise." The ALJ clearly explained that he adopted Dr. Ward's suggestions that Plaintiff could occasionally lift and carry 10 pounds, sit for approximately six hours, and never climb ladders. *See* AR at 23. Further, Dr. Ward suggested that Plaintiff could stand or walk approximately four hours in an eight-hour workday, and the ALJ reduced that to *two* hours based on the evidence in the record. *See id.* at 15, 23. Although the ALJ declined to adopt Dr.

Ward's specific findings about when Plaintiff should alternate between sitting and standing and taking breaks, he still included some limitations in his RFC assessment by finding that Plaintiff "would need to be permitted to alternate from a seated to a standing position (or vice versa) two times each hour for no more than five minutes…" and that she should take normal breaks. *See id.* at 15-16. Relatedly, the ALJ also found that Drs. Jenouri's and Ryan's opinions were consistent with a finding of "sedentary exertional work with some postural limitations." *See id.* at 25.

The ALJ also analyzed Plaintiff's medical records regarding her carpal tunnel syndrome. *See id.* at 19. Despite having normal EMG and nerve conduction studies, Plaintiff complained of pain in her right elbow, numbness of the entire hand on the right with associated swelling, decreased strength on the right side, and weakened grip strength on the right. *See id.* (citing Ex. 22F). To compensate for her carpal tunnel syndrome and related pain, the ALJ assessed that Plaintiff should not perform "frequent fine manipulation such as repetitive hand-finger actions, fingering, or feeling with either hand…" *See id.* at 16. Although the ALJ found that Plaintiff could "grasp, hold, turn, raise, and lower objects with either hand," this was likely a result of *Plaintiff's* admissions to Dr. Ward that she felt she could occasionally do those movements. *See id.* at 16, 23 (citing Ex. 24F). Further, upon examination, Dr. Jenouri found that Plaintiff had full range of motion in her wrists and hands, her hand and finger dexterity were intact, and she had 5/5 grip strength bilaterally *See* AR, Ex. 10F at 519.

Lastly, over the course of eight paragraphs, the ALJ analyzed medical records pertaining to Plaintiff's headaches, which he found were associated with photophobia and phonophobia. *See id.* at 16-17. To accommodate these findings, the ALJ noted that Plaintiff could tolerate no more than moderate levels of noise and that she should not work outdoors in bright sunshine or

- 12 -

with bright or flickering lights. *See id.* (citing Exs. 5F, 22F). Therefore, based upon all of the above-stated facts, the Court finds that the ALJ adequately supported Plaintiff's specific RFC assessment with substantial evidence in the record.

*2. Mental RFC finding*

Plaintiff additionally argues that the ALJ erred in affording the "most weight" to State Agency reviewing psychologist Dr. Harding, "significant weight" to State Agency medical consultant Stephen Drake, Ph.D., "less weight" to consultative psychiatric evaluator Dr. Slowik, and "no weight" to Plaintiff's neurology provider, Jennifer L. Brenner, FNP. *See* Dkt. No. 12 at 19. Plaintiff asserts that FNP Brenner's opinion is entitled to more weight than Drs. Harding's or Drake's opinions because she is a "treating source." *See id.* Plaintiff also contends that the ALJ relied upon a factual inaccuracy when he indicated that Dr. Drake "affirmed the opinion that Dr. Harding had rendered on June 9, 2016." *See id.* (quoting AR at 24). Finally, Plaintiff argues that it was improper for the ALJ to afford "less weight" to Dr. Slowik's opinion and reject all limitations supporting a finding of disability; and, instead, afford the most amount of weight to Dr. Harding's opinion. *See id.* at 20.

First, as the ALJ correctly notes, he was not required to give weight to FNP Brenner as a "treating source" because a nurse practitioner is not an acceptable medical source under the Regulations. *See* AR at 24 (citing 20 C.F.R. §§ 404.1502(a), 416.902(a)). Moreover, nothing in FNP Brenner's treating notes supported her findings that Plaintiff was incapable of low-stress jobs, nor was there any indication that FNP Brenner tested Plaintiff's attention and concentration to support her conclusion that Plaintiff's "pain would constantly interfere with her ability to attend [work] and concentrate[.]" *See id.* (citing Exs. 5F, 22F). The ALJ also noted that FNP Brenner's opinions were contrary to Drs. Harding's and Drake's opinions, both of

- 13 -

whom were acceptable medical sources. *See id.* Thus, the ALJ did not err in giving "[n]o weight" to FNP Brenner's opinion.

The Commissioner admitted that the ALJ inaccurately characterized Dr. Drake's opinion as affirming Dr. Harding's opinions. *See* Dkt. No. 18 at 19. Despite Plaintiff's insistence that the case be remanded to the ALJ for clarification, the Court does not need to remand if the ALJ's misconstruction of Dr. Drake's opinion constituted "harmless error."[4]

Dr. Drake stated that he "concur[red] with the mental discussion on the 6/201/17 [sic] 416 created by the examiner." *See* AR, Ex. 14F, at 536. Single Decisionmaker ("SDM") Danny Johnson completed the SSA-416-U4 form on June 20, 2017. *See* AR, Ex. 13F, at 534-35. SDM Johnson concluded that Plaintiff had significant depressive symptoms and chronic pain and that his overall findings did not support a "fully favorable reversal." *See id.* The ultimate outcome, i.e., Plaintiff's mental RFC finding, would not have changed even if the ALJ had appropriately construed Dr. Drake's opinion. Dr. Drake – whose opinion was given "significant weight," but not as much as Dr. Harding's – was an appropriate medical source who was able to examine the evidence in the record and concur that Plaintiff's mental status did not warrant reversing her original denial of disability benefits. *See id.*; *see also* AR, Ex. 14F at 536. In addition, the ALJ gave the "most weight" to Dr. Harding, who concluded that Plaintiff "still retained the ability to perform the basic mental demands of unskilled work despite her

---

[4] "The harmless error standard has been applied to Social Security actions in the appropriate circumstances." *Thompson v. Comm'r of Soc. Sec.*, No. 7:10-CV-1085 (GLS/ATB), 2011 U.S. Dist. LEXIS 127704, *39 (N.D.N.Y. Aug. 18, 2011) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)). "In *Johnson v. Bowen*, the Second Circuit stated that notwithstanding a legal error, 'where application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency consideration.'" *Id.* (quoting [*Johnson*, 817 F.2d at 986] (citing *Havas v. Bowen*, 804 F.2d 783, 786 (2d Cir. 1986))) (other citations omitted).

psychiatric condition." *See id.* at 23 (citing Exs. 1A, 3A). Thus, the Court finds that the ALJ's inaccurate characterization of Dr. Drake's opinion was harmless error.

The ALJ also did not err in giving the "most weight" to Dr. Harding's opinion and "less weight" to Dr. Slowik's opinion as Plaintiff contends. Neither Dr. Harding nor Dr. Slowik were Plaintiff's treating physicians; and, therefore, the ALJ was not required to give either controlling weight. Furthermore, contrary to Plaintiff's assertions, the ALJ found support for Dr. Slowik's contention that Plaintiff was not limited in following and understanding simple directions and instructions, maintaining attention and concentration, learning new tasks, or making appropriate decisions. *See id.* at 24 (citing Ex. 9F). The ALJ also found support for Dr. Slowik's findings that Plaintiff was mildly limited in performing simple and complex tasks independently and that she had mild limitations in relating to others. *See id.* (citing Ex. 9F). The ALJ's reliance on Dr. Slowik's opinion was shown in the part of his RFC assessment stating that Plaintiff was restricted to "simple, routine, and repetitive tasks[.]" *See id.* at 16. Also, as the Commissioner notes, the only portion of Dr. Slowik's recommendation that the ALJ did not adopt was that Plaintiff was markedly limited in maintaining a schedule and handling stress. *See id.* at 24. However, the ALJ supported this departure by pointing out that Plaintiff attended her medical appointments without problem on a regular basis[5]; and he "accounted for the concerns of Dr. Slowik by restricting [Plaintiff] to simple tasks performed in a reduced-stress work environment." *See id.* at 16, 24. The ALJ's findings, including to which medical sources to give the most credence, were clearly supported by the substantial evidence in

---

[5] Plaintiff asserts that this is not relevant to determining whether she can "'mentally cope with a full-time job.'" *See* Dkt. No. 12 at 21 (quoting *Fountains v. Comm'r of Soc. Sec.*, No. 18-CV-6033-JWF, 2019 U.S. Dist. LEXIS 54459, *12 (W.D.N.Y. Mar. 29, 2019)). However, it *is* relevant to show that Plaintiff is capable of maintaining a schedule, which, in turn, supports the ALJ's finding that she is not disabled.

the record. As such, the Court finds that the ALJ did not err in coming to his mental RFC finding for Plaintiff.

### 3. The ALJ's treatment of Plaintiff's subjective complaints

Finally, Plaintiff contends that the ALJ mischaracterized the evidence about her symptoms, and he did not explain why he failed to find Plaintiff's complaints to be credible. *See* Dkt. No. 12 at 23. As the Court discussed above, an ALJ must use a "two-step process" to determine whether to find Plaintiff's subjective complaints credible. The ALJ properly went through that two-step process here. *See* AR at 16, 22. Additionally, "'[a]s a fact-finder, the ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence.'" *Gonzalez v. Berryhill*, No. 3:18-cv-01820 (RAR), 2020 WL 614201, *5 (D. Conn. Feb. 10, 2020) (quoting *Pietrunti v. Dir., Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997)). "Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are 'patently unreasonable.'" *Hornyak v. Saul*, No. 3:18-cv-1950 (SRU), 2020 WL 1910129, *12 (D. Conn. Apr. 20, 2020) (quotation omitted).

Here, the ALJ provided several examples to explain why he chose not to find Plaintiff's alleged symptoms credible. For instance, the ALJ noted Plaintiff's complaints that she required assistance with "dressing, bathing, and grooming; that she does what she can with respect to cooking, cleaning, laundry, and grocery shopping," that she had to take "frequent breaks due to pain and fatigue," and that "one small activity typically takes her all day." *See id.* at 22. However, the ALJ pointed out that Plaintiff admitted to cooking and cleaning twice per week, doing laundry and shopping once per week, performing childcare twice per week, showering and dressing every day, going out for doctors appointments, and engaging in hobbies such as

- 16 -

watching television, listening to the radio, and bird watching. *See id.* Thus, there were some inconsistencies between her complaints and her actual abilities; and, as such, there is no reason to find that the ALJ's credibility findings were "patently unreasonable." The Court therefore declines to reverse his findings.

## IV. CONCLUSION

Having reviewed the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings, *see* Dkt. No. 12, is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings, *see* Dkt. No. 18, is **GRANTED**; and the Court further

**ORDERS** that the Commissioner's decision is **AFFIRMED** and Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Date: May 8, 2020
      Syracuse, New York